**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION**

**PENNY WOOD-ROSE,**

**Plaintiff,**

**Case No.: ______________**

**vs.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,**

**Defendant.**

---

# COMPLAINT

---

COMES NOW the Plaintiff, Penny Wood-Rose (hereinafter "**Plaintiff**" or "**Ms. Wood-Rose**"), by and through her attorneys, and for her Complaint against Defendant The Lincoln National Life Insurance Company (hereinafter "**Defendant**" or "**Lincoln**"), states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this case is based on the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and in particular, without limitation, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Among other things, those provisions give District Courts the right to hear civil actions brought to recover benefits and clarify rights under the terms of employee welfare benefit plans; here, this consists of the Ridgeview Psychiatric Hospital & Center's Group Long Term Disability Plan and corresponding insurance policy (**Policy No.: 000010141979**) (hereinafter the "**Plan**" and the "**Policy,**" respectively); which was (and is) underwritten, administered, and/or managed by Lincoln for the benefit of certain employees of Ridgeview Psychiatric Hospital & Center and/or its related or associated facilities/locations, divisions, subsidiaries, affiliates and/or other related entities (including Ridgeview Mental Health, upon information and belief Plaintiff's

specific employer) [hereinafter collectively "**Ridgeview**"). In addition, this action may be brought in this Court pursuant to 28 U.S.C. § 1331, which gives District Courts jurisdiction over actions that arise under the laws of the United States ("federal question jurisdiction").

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. These avenues of appeal, *i.e.*, administrative remedies, have now been exhausted by or on behalf of Plaintiff. *See*, **Lincoln Claim Number 1190058812**.

3. Venue is proper in the Eastern District of Tennessee, pursuant to 29 U.S.C. § 1132(e)(2) and/or 28 U.S.C. § 1391.

## RELEVANT PARTIES

4. Ms. Wood-Rose lives in Tazewell, Tennessee, and a substantial part of the events, transactions, and occurrences material to her claim for disability took place within the Eastern District of Tennessee.

5. At all times relevant hereto, Ms. Wood-Rose was an "employee" of Ridgeview, that being her "employer"; as those two terms are defined in 29 U.S.C. §§ 1002(5) and (6). However, due to her established disability, she last worked at Ridgeview on or about April 18, 2019.

6. At all times relevant hereto, Ridgeview Psychiatric Hospital & Center was the Plan Sponsor and Plan Administrator for the Plan; it was also "plan sponsor," "administrator," and/or a "fiduciary" for the Plan, as those terms are defined by 29 U.S.C. §§ 1002(16) and (21); it was also the Policyholder of the Policy.

7. At all times relevant hereto, Defendant was the underwriter, provider of benefits, plan administrator, claims administrator, claims-review fiduciary, and/or claims fiduciary for the Plan; alternatively, or in addition, Defendant was an "administrator" and/or a "fiduciary" for the

Plan, as those terms are defined by 29 U.S.C. §§ 1002(16) and (21). Here, it is apparent on the face of the record that Defendant was/is both ultimate decision-maker (claims administrator, claims-review fiduciary, claims fiduciary) and payer/funding source of any benefits, and thus it is alleged that Defendant has a financial conflict of interest/bias that may impact the standard of review used by the Court.

8. At the times relevant hereto, Defendant Lincoln acted as agent for the Plan and for Plan Sponsor/Plan Administrator/Policyholder Ridgeview Psychiatric Hospital & Center.

9. Under the Plan, Ridgeview Psychiatric Hospital & Center delegated or assigned to Defendant Lincoln the claims-fiduciary and claims-administrator duties for the Plan and under the Policy; *i.e.*, decision-making on claims for benefits, decision-making on appeals of denied claims; plus (upon information and belief) other administrative powers and duties for or under the Plan and the Policy.

10. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); as an incident to her employment, Plaintiff was eligible and covered under the Plan and thus qualifies as a "participant" as defined by 29 U.S.C. § 1002(7).

11. At all times relevant hereto, the Plan/Policy provided generally for payment of disability benefits if Plaintiff became disabled and unable to work because of injury, illness, sickness, and/or other covered medical condition as set forth under the Plan/Policy.

12. The Plan/Policy provides that total disability is defined as follows:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:

> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
>
> 2. **After the Own Occupation Period**, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of **any Gainful Occupation**….

….

**GAINFUL OCCUPATION** means any occupation in which the Insured Employee:

1. is or could reasonably become qualified, considering his or her education, training, experience, mental and physical abilities;

2. **could reasonably find employment, considering the demand in the national labor force**; and

3. could earn (or reasonably expect to earn) a before-tax income **at least equal to 66 2/3% of his or her Predisability Income**, within 12 months of returning to work.

## STATEMENT OF FACTS

13. Plaintiff realleges and reavers paragraphs 1 through 12 of the Complaint, incorporating them by reference herein as if specifically restated.

14. Ms. Wood-Rose is currently 52 years old, and her date of birth is in January of 1974.

15. Ms. Wood-Rose worked for Ridgeview as a program coordinator/addiction recovery specialist.

16. Owing to her established medical disability, as stated, Ms. Wood-Rose's last day of work was on or about April 18, 2019.

17. The medical conditions that form the basis for Plaintiff's disability include, without limitation, the following: epilepsy and related complications; convulsions; post-traumatic seizures; symptomatic Lennox-Gastaut syndrome;[1] temporal sclerosis; cerebral atrophy; impaired vision (esp. on left side); headaches; cognitive impairment including poor short-term memory/memory loss; degenerative disc disease; chronic pain, including right knee and right hip; insomnia; depression. Due to her condition(s), Ms. Wood-Rose cannot drive. Among other things, she is unable/restricted from operating foot controls.

---

[1] Lennox-Gastaut syndrome (LGS) is a severe form of childhood epilepsy with multiple types of seizures. More often than not, LGS persists through childhood and adolescence to adult years.

18. After she could no longer perform her work for Ridgeview, and based on her employment there, Ms. Wood-Rose was eligible and applied for short-term disability ("STD") benefits, upon information and belief through Lincoln. Upon information and belief, STD benefits were awarded from approximately April 19, 2019 through July 17, 2019, the full/maximum duration of such benefits (approx. 90 days).

19. Her medical condition having not improved, Ms. Wood-Rose was eligible and applied for LTD benefits, (again) through Lincoln. Lincoln initially approved Ms. Wood-Rose's claim for LTD benefits and paid such benefits from approximately July 18, 2019 through August 18, 2021; then also from August 19, 2021 through April 25, 2025 (the second span of such benefits coming only after benefits were terminated, then reinstated after two rounds of administrative appeals by undersigned counsel). Thus, all told, Lincoln paid LTD benefits to Plaintiff for approximately five (5) years and nine (9) months, including approximately three (3) years and nine (9) months under the any Gainful Occupation definition of total disability.

20. Ms. Wood-Rose was notified that Lincoln was again terminating LTD benefits, effective April 26, 2025, via letter dated April 25, 2025.

21. Despite two more administrative appeals by undersigned counsel on behalf of Plaintiff, Lincoln has continued to deny further LTD benefits. The final denial letter here at issue was dated February 27, 2026.

22. Any and all applicable insurance-policy premiums required for LTD coverage under the Plan/Policy have been fully paid or otherwise satisfied.

23. Plaintiff has filed or caused to be filed any/all notice(s) and/or proof(s) of claim or loss that were condition(s) precedent to recovering benefits under the Plan/Policy for the losses claimed herein.

24. At all times relevant hereto, *i.e.,* at all times for which monetary or other relief is sought, Plaintiff was "Totally Disabled" or suffering from "Total Disability" as those terms are defined under the Plan/Policy; such that certain policy benefits are now due and overdue to be paid. That is, her claim was and has continued to be amply supported by her treating medical providers, who have confirmed her continuing inability to work.

25. Also, Ms. Wood-Rose has been found to qualify for Social Security disability (SSD) benefits by the Social Security Administration. *See*, SSA Notice of Award dated January 21, 2020; onset date of disability: April 18, 2019. This independent, freestanding determination by the federal government is part of the Administrative Record here, and it is persuasive evidence of disability in this case.

26. Under any ERISA standard of review that may apply, the position taken by Lincoln in denying this claim, viewed against the entire Administrative Record as properly constituted, cannot withstand judicial scrutiny. The any Gainful Occupation review, analysis, and decision by Lincoln were wrong, as well as arbitrary and capricious, under the circumstances presented.[2]

27. Further, Lincoln's denial of benefits here must be reversed to the extent that Plaintiff was not afforded a reasonable opportunity for a full and fair review. *See*, 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1.

28. Plaintiff is entitled to past due LTD benefits, as well as any other companion benefits that were provided under the Plan/Policy during the pertinent time frame. Further, she is entitled to all future LTD benefits and companion benefits provided by the Plan/Policy, provided that she otherwise continues to meet all applicable terms and conditions of same.

---

[2] Plaintiff respectfully reserves all points and arguments regarding the proper standard of review herein pursuant to *Firestone v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) and its progeny.

29. Based on the facts summarized above and further proof that can be gleaned from the record (Administrative Record), if not adduced through any discovery, Plaintiff has suffered a loss of monies, if not other/additional damages; thus, she alleges the causes of action set forth below.

## CAUSES OF ACTION

### COUNT I – ERISA/Statutory Claims

30. Plaintiff realleges and reavers paragraphs 1 through 29 of the Complaint, incorporating them by reference herein as if specifically restated.

31. Based on the facts summarized above, Plaintiff makes claim under ERISA for the reinstatement/award of all LTD and related benefits due; past, present and future; pursuant to the Plan/Policy at issue. That is, this is an action by a plan participant seeking recovery of benefits; and/or clarification/declaration/enforcement of rights and benefits; brought pursuant to 29 U.S.C. §§ 1001, *et seq*., in particular 29 U.S.C. § 1132(a); as well as all pertinent implementing regulations and the federal common law developed in the context of ERISA.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against the Defendant; declaring, determining, clarifying and ordering under ERISA (via 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, via injunction pursuant to Fed. R. Civ. P. 65, via specific performance, or otherwise) that Defendant or its designee pay to Plaintiff any and all LTD benefits to which she was entitled but is still owed; or, alternatively, a dollar amount equal to the contractual amount of benefits to which Plaintiff was entitled but never paid; or, alternatively, assess concomitant

surcharge(s) under principles of equity;[3] each together with interest; and all as recoverable pursuant to the terms of the Plan/Policy at issue, under ERISA law, and subject to the proof;

B. That the Court enter judgment in Plaintiff's favor and against the Defendant; declaring, determining, clarifying and ordering under ERISA (via 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, via injunction pursuant to Fed. R. Civ. P. 65, via specific performance, or otherwise) that Defendant or its designee pay to Plaintiff all LTD benefits to which she is or will be entitled in the future pursuant to the contractual terms of the Plan/Policy at issue; subject to the proof and policy application procedures, as required; and so long as she otherwise continues to meet all applicable terms and conditions of the Plan/Policy;

C. That the Court award to Plaintiff her attorney's fees and costs of action pursuant to ERISA. *See*, 29 U.S.C. § 1132(g);

D. That the Plaintiff recover any and all other, different or additional damages, expenses, costs and relief (legal, equitable, declaratory or remedial) to which she may be entitled by virtue of the facts and cause(s) of action alleged above, consistent with the ERISA statute and regulations, the federal common law developed in the context of ERISA, and the interests of equity and justice; including without limitation any applicable or accrued cost-of-living adjustments ("COLAs"); any provision for waiver of, continuation of payment of, or reimbursement of, premiums on health and dental insurance; any provision for waiver of, continuation of payment of, or reimbursement of, premiums on life insurance (life waiver of premium); and any provision for continued payments/contributions to employer-sponsored pension or retirement plan(s) (if and as any/all of those items may be provided under the Plan/Policy in force); plus pre-judgment

[3] *See, CIGNA Corp. v. Amara*, 563 U.S. 421, 440-445 (2011).

interest[4] and post-judgment interest[5] on all amounts awarded or to be awarded;

E. That the Court order under ERISA (via 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, via injunction pursuant to Fed. R. Civ. P. 65, via specific performance, or otherwise) that the Defendant or its designee render and provide a full and accurate accounting of all dollar figures and computations for Plaintiff's LTD benefits to be paid; in sufficient detail so that Plaintiff may ascertain that her benefits are paid in the proper amounts; and to include any putative offset amounts that might reduce the amount of benefits otherwise paid;

F. That Plaintiff be awarded such additional/other relief as appropriate and just; and

G. Plaintiff reserves the right, if appropriate, pursuant to Fed. R. Civ. P. 15 or otherwise to amend/supplement this lawsuit and the Prayer for Relief based on additional fact/circumstances not now reasonably apparent, or to be revealed in discovery conducted herein; and/or to add any party-defendant(s) necessary to afford complete relief to Plaintiff.

**CODY ALLISON & ASSOCIATES, PLLC**

*/s/ Samuel D. Payne*
K. Cody Allison, BPR No. 20623
Samuel D. Payne, BPR No. 19211
Richard A. House, BPR No. 20135
Cavalier Building
95 White Bridge Road, Ste. #250
Nashville, TN 37205
Telephone: (615) 234-6000
Fax: (615) 727-0175
cody@codyallison.com
sam@codyallison.com
richard@codyallison.com

[4] *See, Curtis v. Hartford Life & Accident Ins. Co*., 64 F. Supp. 3d 1198, 1224 (N.D. Ill. 2014) (presumption in favor of prejudgment interest is specifically applicable in ERISA cases).

[5] *See*, 28 U.S.C. § 1961.